## LAUGHLIN v. KING.
### (No. 740.)

ANIMALS—BREEDING CONTRACT—OFFER AND ACCEPTANCE—CONSTRUCTION— PART PERFORMANCE — PLEADING — DEMURRER — EVIDENCE—VERDICT— SUFFICIENCY—CONSTRUCTION — PREJUDICE —APPEAL AND ERROR—SUPERSEDEAS BOND.

1. Defendant wrote plaintiff that if he would purchase a certain stallion defendant would guarantee to breed forty mares the coming season at twenty dollars. In an action for the stipulated price for breeding fifteen mares and damages for the failure to furnish any other mares to be bred, plaintiff alleged that he had accepted the offer and purchased the stallion, all of which defendant well knew; that during the year after said purchase defendant bred fifteen mares to the stallion, but refused to pay for said service, and failed to furnish to be bred any other mares. *Held,* that the petition stated a cause of action at least for the breeding of the mares which it is alleged were bred, and that the agreement to that extent having been performed it was not material, on demurrer to the petition, that the place of performance was not stated in the offer, nor were the terms "coming season" and "breed," in the connection in which they were used in defendant's offer, so ambiguous or uncertain as to render the petition vulnerable to a general demurrer.

2. The petition stating two causes of action in one count, one for serving fifteen mares by plaintiff's stallion under an alleged contract and the other for damages for failure to furnish a specified number of other mares to be bred, it was not subject to a general demurrer for failing to allege as to the breeding of the mares not furnished that plaintiff was ready and willing to perform the agreement on his part, no motion having been made to require the causes of action to be separately stated.

3. In said action the evidence *held* sufficient to sustain a verdict for $200 and interest, since it was ample to sustain a finding that defendant was liable and that at least ten of the fifteen mares furnished to be bred were bred in pursuance of the contract, as the jury evidently found, and defendant's said offer did not purport to be made by himself as agent, and the evidence being sufficient to support a finding that plaintiff had no knowledge that the offer was intended to be other than the individual offer of defendant.

4. A verdict, "that there is due said plaintiff from said defendant the sum of Two Hundred Dollars with interest, $238.66 2-3," is to be understood as meaning $200 principal and $38.66 2-3 interest, which was in accordance with the instruction of the court that if the jury found for the plaintiff they should allow interest on the sum at a rate and from a date stated in the instruction, and the verdict was not too indefinite to support the judgment.

5. Plaintiff's recovery having been limited by the verdict to the stipulated contract price for certain mares actually furnished to be bred, defendant was not prejudiced by instructions that if plaintiff purchased the horse on defendant's offer to furnish the mares, the offer and acceptance constituted a contract, and, if plaintiff performed the contract on his part and held himself ready to breed the mares in accordance with its terms, the jury should find for him.

6. When a judgment or final order sought to be reversed directs the payment of money, the amount of the supersedeas bond should be fixed by the court rendering the judgment or the judge thereof, as provided by Section 5116, Compiled Statutes 1910; in such a case neither the Supreme Court nor a judge thereof is authorized to fix the terms on which execution shall be stayed.

7. Notwithstanding that an undertaking to operate as a supersedeas may have been invalid because the amount thereof had not been fixed by the District Court which rendered the judgment, or the judge thereof, or that it may have become ineffective because given under the provisions of Section 5117, Compiled Statutes 1910, and the proceeding in error had not been commenced within ninety days after it was filed, the party had the right, on commencing his proceeding in error, to stay execution by complying with the provisions of Section 5116.

[Decided July 19, 1913.]                    (133 Pac. 1073.)

ERROR to the District Court, Albany County; HON. CHARLES E. CARPENTER, Judge.

The material facts are stated in the opinion.

*Gibson & Sullivan,* for plaintiff in error.

The writing relied upon as an offer by the defendant is too ambiguous, indefinite and uncertain to constitute an offer which upon acceptance could become a binding contract,

without further negotiations settling and defining the terms thereof. It was nothing more than a step preliminary to negotiations. The place or places where the mares should be bred, the time or times "during the coming season," the meaning of the word "breed," or under what conditions and to what extent the mares should be served before they should be considered bred, and the defendant liable, are matters all left unsettled and uncertain. The offer does not show an intention to become bound by the mere purchase of the horse by the plaintiff and the mere knowledge of that fact by the defendant, but contemplates the making of further arrangements between the parties after notice to defendant of the purchase of the horse and of plaintiff's willingness, ability and readiness to enter into the contract along the lines suggested. (Clark on Contracts, pp. 61-64; 9 Cyc. 248; Burns v. Mills, 9 S. E. 689; Hubbard City &c. Co. v. Nichols, 89 S. W. 795; Shepard v. Carpenter, 55 N. W. 906.) It is not alleged in the petition that plaintiff was ready and willing to perform the supposed agreement, and for that reason alone the demurrer should have been sustained. (9 Cyc. 720, 723; 4 Ency. Pl. & Pr. 932.) The petition does not allege the performance by the plaintiff of any condition save that he accepted the offer and purchased the stallion. It does not allege that defendant had knowledge of the purchase before he had made other arrangements to breed his mares, or that anything toward the acceptance of the offer was done other than to purchase the horse. (9 Cyc. 721, 722; Bliss on Code Pl., Secs. 301, 302.)

The verdict is not sustained by sufficient evidence. A verdict should have been directed for the defendant, since the pleadings did not allege, and there was no attempt to prove, the performance of the necessary conditions to render the defendant liable. (9 Cyc. 760, 761.) We think it appears from the evidence that the plaintiff accepted as the other party to the so-called contract the Toltec Live Stock Company, and not the defendant. The plaintiff admitted the defendant to be the manager for said company, but states

that he did not charge the company for the services sued for. Yet in a letter written by him introduced in evidence he seems to have referred to said company as his debtor for the services aforesaid. The verdict is indefinite and uncertain and insufficient to support a judgment. The instructions to the effect that if plaintiff purchased the horse referred to in the offer it would constitute an acceptance were erroneous. The instruction that the jury might find for the plaintiff if they found that he had performed his contract and held himself ready to breed the mares was erroneous since the petition did not allege a willingness and readiness on the part of the plaintiff to perform his part of the contract. (Indiana R. Co. v. Maurer (Ind.), 66 N. E. 156; Latourette v. Meldrum (Ore.), 90 Pac. 503; Coos Bay Co. v. Siglin (Ore.), 38 Pac. 192; Moody v. Rowland, 99 S. W. 1112; Murchison v. Mansur-Tibbetts Co. (Tex.), 37 S. W. 605.) Instruction No. 7 invaded the province of the jury in that it gives undue prominence to and comments on the weight to be given to a certain fact. It does not state a correct proposition of law and its apparent object was to limit the jury in a consideration of the evidence. (38 Cyc. 1640-1650; Marshall v. Rugg, 6 Wyo. 270.) The instruction requested by defendant and based upon the theory that the offer was too indefinite and uncertain to constitute a contract upon its mere acceptance should have been given.

*C. P. Arnold,* for defendant in error.

It is impossible to see how any error can be reasonably asserted since the verdict was for less than the actual service proven upon the trial. The demurrer was properly overruled. The offer was sufficient when accepted to constitute a contract. It was accepted and in part performed. The petition alleges performance, and, therefore, cannot be held insufficient for failure to allege an offer to perform. All the objections are so frivolous that defendant in error should be awarded a reasonable attorney's fee under the provisions of Section 5110, Comp. Stat. 1910.

BEARD, JUSTICE.

This action was brought in the District Court of Albany County by the defendant in error, Herbert King, against the plaintiff in error, L. L. Laughlin, to recover on an alleged contract for the breeding of certain mares to a stallion owned by King. There was a verdict and judgment for plaintiff below, and Laughlin brings error.

The plaintiff alleged in his petition, substantially, that about August 16, 1905, the defendant agreed with plaintiff that if plaintiff would purchase a certain stallion, then for sale, known as "Tarquin," the defendant would breed to said stallion forty mares and would pay for such services the sum of twenty dollars for each mare. That about said date to induce plaintiff to purchase said stallion the defendant made the following offer in writing, to-wit: "Dear Herb: If you make a deal with Mr. Holdridge for the Oldenburg Coach horse 'Tarquin' I will guarantee to breed 40 mares the coming season at $20.00. I think him a magnificent stallion. Yours truly, L. L. Laughlin. This is provided I know before I make other arrangements."

That plaintiff accepted said offer and purchased the stallion, all of which the defendant well knew. That during the year 1905, after the purchase of said stallion by plaintiff, the defendant bred fifteen mares to said stallion, and no more, and refused to pay twenty dollars per head or any other sum therefor, and that he failed to furnish to be bred any other mares except the fifteen head, to plaintiff's damage in the sum of eight hundred dollars, for which with interest plaintiff prayed judgment against defendant.

The defendant demurred to the petition on the ground that the facts stated therein were insufficient to constitute a cause of action. The demurrer was overruled, and the defendant answered, first, denying specifically the allegations of the petition; and, second, alleged that when the written instrument was made he was the agent and manager of the Toltec Live Stock Company; that it was a general, uniform and established custom and usage on the part of defendant to use his own name in acting for the company, of which cus-

tom and usage plaintiff had full knowledge; that said instrument was made by defendant on behalf of said company and was preliminary to negotiations for the service of said stallion provided plaintiff should purchase it. That plaintiff failed to notify defendant of the purchase of said stallion until about July 15, 1906, after arrangements had been made for the season. Alleged that the fifteen mares were turned over to plaintiff to be bred for said company under an agreement made about July 15, 1906, and that plaintiff knew that the company was the principal party to said contract and accepted said mares with that understanding and elected to hold it for his charges. A motion to strike out parts of the second count of the answer was denied; a demurrer to said second count was overruled, and plaintiff replied denying the allegations contained in said count except that plaintiff bred fifteen mares, as stated in his petition.

The overruling of the demurrer to the petition is assigned as error, and it is argued that the writing was too ambiguous, indefinite and uncertain to constitute an offer capable of becoming a contract by its acceptance. That the place of performance is not stated, and that the term "during the coming season" and the word "breed" are indefinite. We think the petition stated a cause of action at least for the breeding of the fifteen mares which it is alleged were bred. The offer was to breed forty mares to the horse if he was purchased by plaintiff, and it is alleged that the offer was accepted and fifteen mares were furnished by defendant and bred to said stallion. The agreement to that extent having been performed, it was not material that the place of performance was not stated in the offer. Nor do we think the terms "coming season" or "breed," in the connection in which they were used, were so ambiguous or uncertain as to render the petition vulnerable to a general demurrer.

It is further contended that the petition contained no allegation that the plaintiff was ready and willing to perform the agreement on his part. That might apply to that part of the petition claiming damages for the failure of defendant

to furnish the other twenty-five head of mares; but the petition was in one count including two causes of action, one for breeding fifteen mares under the contract and the other for damages for the failure to furnish the others, and no motion was made to require the causes of action to be separately stated, and the demurrer was general and was, therefore, properly overruled.

It is next urged that the verdict and judgment are not sustained by sufficient evidence. The verdict and judgment were for two hundred dollars and interest, and we think the evidence was ample to sustain a finding that defendant was liable and that at least ten of the fifteen mares were bred in pursuance of the contract, and the jury evidently so found. The offer of defendant did not purport to be made by him as agent, and there was sufficient evidence to support a finding that plaintiff had no knowledge that the offer was intended to be other than the individual offer of defendant. Defendant testified that a few days after plaintiff purchased the horse he had a conversation with plaintiff in which plaintiff informed him of the purchase; and again, "there was nothing more said in regard to this agreement until along about time for the breeding season. I asked Mr. King where he was going to stand the horse, and intimated that I wanted to breed these mares. He said he was going to stand him at home." And again, speaking of another conversation: "Well, this was about the latter part of the breeding season. I should think about July, the middle of July, 1906, Mr. King approached me at the corner of the Cosgriff store—between that and Lewis's saloon— and made the remark: 'What about those mares, Laughlin?' And I said: 'Herb, it is too late for me to get those mares now. They are on the range and many of them have been bred. I couldn't get them for you in time; but I will try and get some of them, if I can find some that have not been bred, haven't foaled; then you can keep those until they have their colts and we can be sure they have been bred. I will get you fifteen, anyhow, if that will be satisfactory.'

And he said: 'That will be satisfactory.'" This testimony in connection with that given on behalf of plaintiff was ample to support the judgment.

It is contended that the verdict was too indefinite to support the judgment. By the verdict the jury found, "that there is due said plaintiff from said defendant the sum of Two Hundred Dollars with interest, $238.66 2-3." That is, as we understand it, $200 principal and $38.66 2-3 interest, which was in accordance with the instruction of the Court, that if the jury found for the plaintiff they should allow interest on the sum so found at eight per cent. per annum from October first, 1906. There was no objection to that instruction on that ground, nor was it alleged to be error in the motion for a new trial. The verdict was returned March 23, 1909, and if the jury made a mistake in computing the interest it was in favor of defendant, and he should not complain. It is assigned as error that the Court instructed the jury to the effect that if it found that plaintiff accepted the offer and purchased the stallion, then the offer and acceptance constituted a contract between the parties. And in the next instruction, if they found that plaintiff performed the contract on his part and held himself ready to breed the mares in accordance with its terms, then they should find for the plaintiff. If there was error in these instructions the defendant was not prejudiced thereby, as it is evident the jury awarded no damages for the failure of defendant to furnish the full number of mares stated in the offer, and that the verdict was for the number only that the evidence showed were actually furnshed and bred. It is contended that there was error in the refusal of the Court to give certain instructions requested by defendant. Those instructions presented substantially the same questions decided by the ruling on the demurrer and relate to the alleged indefiniteness of the offer, which we have already considered. A careful examination of the record convinces us that no prejudicial errors were committed on the trial

and that the judgment should be affirmed and it is so ordered.

Upon filing his petition in error, the plaintiff in error applied to the Chief Justice of this Court for an order staying execution on said judgment pending the proceedings in error, and such order was made. The defendant in error thereupon filed his motion to vacate said order on the grounds that it was improvidently issued; that the Chief Justice had no jurisdiction to issue said order, in that the judgment was an action at law for the recovery of money only and the judgment was for the payment of money. This motion was argued and submitted with the main case. The statute, Section 5116, Comp. Stat. 1910, provides: "No proceeding to reverse, vacate or modify a judgment or final order rendered in the District Court, except as provided in the fourth sub-division of this section and in Secs. 5119 and 5120, shall operate to stay execution until the party against whom such judgment or final order was made shall file in the office of the Clerk of the Court wherein such judgment or final order was rendered, a written undertaking with sureties to be approved by the Court or the Judge thereof, or by the Clerk of said Court as follows:

"1. When the judgment or final order sought to be reversed directs the payment of money, the written undertaking shall be in such sum as shall be fixed by the Court or the Judge thereof to the effect that the plaintiff in error will pay the condemnation money and costs, if the judgment or final order be affirmed in whole or in part, or if the proceedings in error be dismissed."

"2. When it directs the execution of a conveyance or other instrument," * * * * * * * *

"3. When it directs the sale or delivery of possession of real property," * * * * * * * * *

"4. When it directs the assignment or delivery of documents," * * * * * * * * * * *

Sec. 5117 provides that such undertaking shall operate as a stay of execution for the period of ninety days from the date the same is filed whether proceedings to reverse, vacate or modify such judgment or final order have been taken or not, and if within said ninety days proceedings in error have been commenced as provided by Sec. 5114 it shall operate as a stay of execution until the cause is finally determined in the Supreme Court.

Sec. 5119 provides for the filing of the conveyance or instrument mentioned in the second sub-division of Section 5116 instead of the undertaking. Sec. 5120 relates to executors, &c. Sec. 5124 provides: "Execution of a judgment or final order, other than those enumerated in this chapter, of any judicial tribunal, or the levy or collection of any tax or assessment therein litigated, may be stayed, on such terms as may be prescribed by the court in which the petition in error is filed, or by a judge thereof."

The judgment in the present case is one for money only and comes within the first sub-division of Section 5116, and is excepted from the provisions of Section 5124 by the language of the latter section. The question presented by the motion was directly decided by the Supreme Court of Ohio in Hyde v. Bank, 49 O. St. 60, 34 N. E. 720. The court said: "Where a judgment is rendered in the court of common pleas against a defendant for money only, and it is affirmed by the Circuit Court, the defendant, upon filing a petition in error in this court to reverse the judgment below, is entitled to a stay of execution, upon giving an undertaking in double the amount of the judgment, to the acceptance of the clerk of the circuit court, in accordance with Section 6718, Revised Statutes. (Substantially our Sec. 5116, except in ours the amount is fixed by the District Court or judge thereof.) In such case this court is not required, nor authorized, by the provisions of Section 6725, Revised Statutes (our Sec. 5124), to fix the terms of the stay of the judgment of the circuit court." The decision in that case accords with our view of the correct construction of the several sections of

the statute. Prior to the act of March 8, 1890 (Ch. 38, S. L. 1890; Sec. 5117, Comp. Stat. 1910), it would seem that the undertaking provided for by Section 5116 was to be filed after proceedings in error were commenced; but by the latter act the undertaking may be filed at any time after the rendition of the judgment or entering of the final order and will stay execution for ninety days from such filing whether proceedings in error are taken or not; and if proceedings in error are commenced within the ninety days such undertaking will stay execution until the final determination of the case. In this case it appears from the record that defendant on April 22, 1912, filed an undertaking to stay execution under the provisions of Sections 5116 and 5117; but no order of the court or judge fixing the amount of such undertaking appears in the record, and no proceedings in error were commenced until January 6, 1913. We are of the opinion, however, that, notwithstanding the giving of the undertaking of April 22, 1912, whether valid or not, the defendant (plaintiff in error) had the right, on commencing his proceedings in error, to stay execution by complying with the provisions of Section 5116; but in a case like the present one neither this court nor a judge thereof is authorized to fix the terms on which execution will be stayed, the statutes having otherwise prescribed the method for so doing. The application for the order, made to the Chief Justice, was *ex parte* and the order was inadvertently issued, and while perhaps not of much importance at this stage of the case, the defendant in error is entitled to have the order vacated. The judgment of the District Court is affirmed, and the motion to vacate the order staying execution granted.

*Affirmed and order vacated.*

SCOTT, C. J., and POTTER, J., concur.